UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

PAULA LAFOND,

Plaintiff,

-vs-                                                    Case No.  6:14-cv-1001-Orl-DAB

COMMISSIONER OF SOCIAL
SECURITY,

Defendant.

_____

# Memorandum Opinion & Order

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying her claim for Disability Insurance Benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case.  Oral argument has not been requested.

For the reasons that follow, the decision of the Commissioner is **REVERSED** and **REMANDED.**

## I.      BACKGROUND

### A.      Procedural History

Plaintiff filed for a period of disability and disability insurance benefits on February 10, 2011, alleging an onset of disability on July 29, 2010, due to degenerative disc disease that radiated to her shoulders, neck, and hip, hepatitis B, and acid reflux disease.  R. 123-31, 171-75, 217.  Her application was denied initially and upon reconsideration.  R. 73-82.  Plaintiff requested a hearing,

which was held on September 18, 2012, before Administrative Law Judge Mary C. Montanus (hereinafter referred to as "ALJ").  R. 29-62.  In a decision dated December 31, 2012, the ALJ found Plaintiff not disabled as defined under the Act through the date of her decision.  R. 14-23.  Plaintiff timely filed a Request for Review of the ALJ's decision, which the Appeals Council denied on May 7, 2014. R. 1-3.  Plaintiff filed this action for judicial review on June 25, 2014.  Doc. 1.

### B.    Medical History and Findings Summary

Plaintiff was born on December 12, 1955; she was 55 years old, a "[p]erson of advanced age," when she applied for benefits, and was 56 years old when the decision was issued. R. 123; *see* 20 C.F.R. § 404.1563 (2014). Plaintiff testified that the highest grade of school completed was twelfth grade, and that she had worked as an account receivable/payable clerk, customer service clerk, data entry clerk, cashier, receptionist, and fast food manager. R. 37-41, 183-85.  Plaintiff's date of last insured for benefits is December 31, 2015. R. 132.

Plaintiff's medical history is set forth in detail in the ALJ's decision.  By way of summary, Plaintiff complained of back, shoulder, neck, hip pain, dizziness, hepatitis B, acid reflux disease, high blood pressure, and headaches.  R. 175, 182, 198, 208, 217.  After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from degenerative disc disease of the cervical and lumbar spine, mild scoliosis, and chronic hepatitis B, which were "severe" medically determinable impairments, but were not impairments severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 16-17. The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform less than the full range of light work. R. 18.  Based upon Plaintiff's RFC, and the testimony of the vocational expert ("VE"), the ALJ determined that she could perform her past relevant work as an accounting clerk, manager fast food services, customer complaint clerk, receptionist, or data entry clerk.  R. 22.

Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision.  R. 23.

Plaintiff now asserts a single point of error with several subparts.  She argues that the ALJ erred by improperly applying the pain standard and in evaluating her credibility.  For the reasons that follow, the decision of the Commissioner is **REVERSED** and **REMANDED.**

## II.     STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004).  "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f).

## III.     ISSUES AND ANALYSIS

### A. Pain and credibility

Plaintiff asserts that the ALJ erred in evaluating her pain due to degenerative disc disease of cervical and lumbar spine and mild scoliosis. She also argues that the ALJ erred by finding her subjective complaints only partially credible. The ALJ determined that Plaintiff had the RFC[1] for light work and could return to her past relevant work; the ALJ found that Plaintiff's testimony was not entirely credible. R. 21. The ALJ found that Plaintiff's medically determinable impairments "could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [ALJ's] residual functional capacity assessment." R. 21. The

---

[1]Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997).

Commissioner argues the ALJ's decision to discount her credibility is supported by the conservative, non-intensive nature of Plaintiff's course of treatment.  Doc. 20.

Pain is a non-exertional impairment.  *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote*, 67 F.3d at 1560, *quoting Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).  The Regulations provide that once such an impairment is established, all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability."  *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995) (citing 20 C.F.R. § 404.1529).

In other words, once the issue becomes one of credibility and, as set forth in SSR 96–7p, in recognition of the fact that a claimant's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by objective medical evidence alone, the ALJ in assessing credibility must consider in addition to the objective medical evidence the other factors/evidence set forth in 20 C.F.R. § 404.1529(c). "When evaluating a claimant's subjective symptoms, the ALJ must

consider the following factors: (i) the claimant's 'daily activities; (ii) the location, duration, frequency, and intensity of the [claimant's] pain or other symptoms; (iii) [p]recipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the [claimant took] to alleviate pain or other symptoms; (v) treatment, other than medication, [the claimant] received for relief . . . of pain or other symptoms; and (vi) any measures the claimant personally used to relieve pain or other symptoms.'" *Leiter v. Commissioner of Social Security Administration*, 377 Fed.Appx. 944, 947 (11th Cir. May 6, 2010) (quoting 20 C.F.R. §§ 404.1529(c)(3); *see also* SSR 96–7p, 1996 WL 374186, at *3 ("In recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 CFR 404.1529(c) and 416.929(c) describe the kinds of evidence . . . that the adjudicator must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements[.]"); *Arbisi v. Colvin*, 2015 WL 3765374 (M.D. Fla. June 16, 2015) ("Relevant factors in this consideration include the objective medical evidence, evidence of factors that precipitate or aggravate the symptoms, medications and treatments available to alleviate the symptoms, how the symptoms affect daily activities, and past work history."). Pursuant to the SSA regulations and Rulings, the claimant's work history and the consistency of her subjective statements are also relevant to the credibility determination. 20 C.F.R. § 404.1527(c)(3); SSR 96–7p, 1996 WL 374186, at *5.

Although the ALJ did not refer to the Eleventh Circuit's pain standard as such, she did cite to the applicable regulations and Social Security Ruling ("SSR") 96-7p. R. 18. *See Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002)(per curiam)(ALJ properly applied the Eleventh Circuit pain standard even though he did not "cite or refer to the language of the three-part test" as "his findings and discussion indicate that the standard was applied").

In discussing Plaintiff's RFC, the ALJ stated regarding Plaintiff's credibility:

-6-

Although the record reflects imaging support for degenerative disc disease of the cervical and lumbar spine and treatment for associated pain and limitations, the claimant never had surgery or sought repeated emergency treatment for her back and neck pain. There have been findings of decreased range of motion in her cervical and lumbar spine, but the claimant consistently demonstrated full strength in her upper and lower extremities and no neurological deficits. During the consultative examination with Dr. Grant, tenderness and decreased range of motion in her neck and back were noted, but the findings were otherwise benign; the claimant demonstrated full grip strength, her gait was normal, she was able to squat, straight leg raises were negative bilaterally, and her sensation was intact. Imaging has not revealed more than mild to moderate changes. . . . The undersigned finds that the claimant's reported daily activities are inconsistent with complaints of disabling symptoms and limitations. For example, the claimant testified that she was able to drive, shop, cook, wash dishes, and do laundry. The claimant alleged significant medication side effects, but significant ongoing medication side effects are not reflected in the treatment record and the mental status findings of record do not show abnormality. Further, as noted earlier, the claimant received unemployment from the third quarter of 2010 to the first quarter of 2012. The fact that the claimant was collecting unemployment benefits, for which she reported being able and ready to work, while alleging to the Social Security Administration that she is disabled, has also been considered a factor when evaluating the weight to be given to the claimant's allegations.

R. 21 (internal citations omitted). The ALJ subsequently also discounted Plaintiff's credibility because "it would be reasonable to expect that the claimant would have obtained more aggressive treatment from a neurologist or orthopedic surgeon." R. 21-22.

When an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

Plaintiff challenges the ALJ's reasoning that the objective evidence – treatment records, physical exam findings, and imagining reports – did not show the degree of ongoing abnormality that would preclude light work or her past relevant work. She argues that the ALJ's reasons were not

inconsistent with Plaintiff's complaints of pain and its limiting effects; there was significant objective evidence including diagnostic testing and physical exam which supported Plaintiff's subjective complaints.  Plaintiff cites several academic medical studies for the proposition that the severity of pain does not always correlate to the diagnostic evidence.  Doc. 19 at 15-16 (citing medical studies). Plaintiff further argues that the ALJ erred in discounting her credibility due to "lack of surgery, continued emergency treatment, or more aggressive treatment" because the ALJ ignored the fact Plaintiff sought weekly chiropractic treatment for a year (from 2011 to 2012) in an effort to relieve her symptoms and failed to address Plaintiff's reasonable explanation that she did not seek surgery or more aggressive medical treatment because the medical evidence and her testimony showed that she did not have the financial means to seek more aggressive treatment, citing R. 46, 357-358, 375. The Commissioner argues that the conservative nature of Plaintiff's course of treatment supports the ALJ's decision to discount her credibility. Doc. 20 at 4.

Plaintiff contends that the ALJ erred in finding that the objective medical evidence and records did not support her allegations of pain and limitations and her inability to afford additional treatment. Plaintiff described for Dr. Grant, the consultative examiner, how her back problems increased over the years, with her symptoms gradually worsening:

> The patient gives a history of experiencing neck and low back pain since 1999. She reports that this was gradual in onset. She reports that she had MRI studies in New York which were consistent with degenerative disc disease. The patient was treated for many years with medication, physical therapy, chiropractic therapies, and acupuncture with significant improvement She also has undergone epidural injections to the lumbar spine, with good response. However, the patient lost her medical insurance in 2007 and has been unable to afford to continue in pain management. . . . The pain increases with prolonged sitting, prolonged standing, and with bending.

R. 375.  The objective medical records support Plaintiff's description of the gradual increase in her symptoms.

The Administrative Record contains medical records dating back to 2005, when Plaintiff sought treatment at Healthcare Associates in Medicine for worsening of pain in her lower back. R. 263-329. At least as far back as March 22, 2005, Plaintiff sought medical treatment for pain radiating from her lumbar spine into her buttocks and down the back of the legs; she reported that physical therapy and chiropractic treatment provided only temporary relief; the physical exam was generally benign, with the exception of positive straight-leg raising bilaterally. R. 299. Plaintiff was referred to physical therapy and pain management at that time. R. 300.

A February 26, 2006 MRI scan of Plaintiff's lumbar spine revealed mild broad based disc bulge at L4-5 slightly asymmetrical to the right producing mild right neural foraminal narrowing; broad based left paracentral disc protrusion at L5-S1 without significant mass effect on the thecal sac; and mild lumbar levoscoliosis. R. 307-08. The March 11, 2006 MRI of Plaintiff's cervical spine revealed broad based spondylotic ridges at C5-6 and C6-7 with moderate effacement of the anterior thecal sac at C6-7. R. 305-06. From August 2005 through January 2007, Plaintiff underwent several epidurograms in her cervical and lumbar spine, revealing lumbar disc displacement and concordant pain at L4-L5, L5-S1, and questionable L2-L3; and cervical degenerative disease and cervical radiculopathy, as well as epidural steroid injections. R. 264-91, 317-33.

On April 6, 2007, Plaintiff returned for a follow up visit complaining of recurrent pain, and reporting that the epidural steroid injections only provided temporary relief. R. 263. She was diagnosed with lumbar degenerative disc disease with myopathy; lumbar facet arthropathy; and cervical spondylosis. R. 263.

From October 2008 through March 2010, Plaintiff treated with John Hartman and Associates for, among other things, chronic back pain. R. 352-63. The March 24, 2009 MRI of her lumbar spine showed mild right-sided neural foraminal narrowing at L4-5 secondary to annular bulge and

ligamentous and facet hypertrophy; and annular bulges at L2-3, L3-4, and L5-S1 which causes no central canal stenosis or neural foraminal narrowing. R. 500. Plaintiff reported to this practice that she could not come in for an office visit to review her MRI results or see a specialist due to financial reasons. R. 357-58. Plaintiff testified that she eventually stopped working in 2010 mainly because of the pain and her employer was not pleased with her productivity, she could not keep up with her job duties and her boss was not pleased with her work; she reported that in a typical day, she would be away from her work station for a total of ninety or more minutes because she could not sit at her desk for long periods of time due to pain. R. 19, 41-43, 48.

By January 2011, Plaintiff had been laid off and was on unemployment when she sought emergency room treatment at Florida Hospital for a flare up of chronic back and neck pain; X-rays of the cervical spine and lumbosacral spine showed degenerative disk disease, with narrowing of the C5-6 and C6-7 disk spaces with mild anterior osteophytes, and mild L2-3 degenerative disk disease, with narrowing of the L2-3 disk space with anterior osteophyte. R. 478-91. She was prescribed Tramadol, Flexeril, and Naproxen. R. 483.

On February 3, 2011, Plaintiff was seen at the Osceola County Health Department for chronic back pain, degenerative disc disease, arthritis, headaches, and chronic hepatitis B. R. 368-73, 426-45, 474-77. She was prescribed Naproxen, Tramadol, and Elavil. R. 371, 427, 429, 439. During the May 2011 consultative examination by Dr. Grant, Plaintiff reported constant neck pain that radiates to the tops of both shoulders; increased pain with sudden movements; constant low back pain that is increased with prolonged sitting, prolonged standing, and with bending; and recurrent dizziness described as vertigo occurring up to three (3) times per week lasting five (5) to ten (10) minutes and occasionally occurs with change in positions. R. 375. Physical examination revealed tenderness to palpation of the cervical and thoracolumbar paravertebral muscles; decreased range of motion in the

cervical spine, and decreased range of notion in the thoracolumbar spine. R. 377. Dr. Grant opined that X-rays of the lumbosacral spine revealed moderate degenerative changes. R. 377. Dr. Grant diagnosed Plaintiff with chronic neck pain; chronic low back pain; history of degenerative disc disease, lumbar spine; osteoarthritis, lumbar spine; recurrent dizziness; history of hepatitis B; and history of gastroesophageal reflux disease. R. 378. Dr. Grant opined that Plaintiff's subjective complaints were consistent with the objective medical findings. R. 378.

On June 15, 2011, Plaintiff was seen at Pleasant Hill Family Chiropractic for persistent neck and back pain and frequent headaches. R. 388-95. Physical examination revealed head tilt to the left, and elevated shoulder and hip on the right. R. 388. Cervical compression test was positive for lower cervical pain; shoulder depressor was positive bilaterally; straight leg raise was positive bilaterally; sit up was positive for lumbar pain; Kemp's test was positive bilaterally; Sacral compression test was positive on right; and Prone short leg finding was positive on right. R. 389. Range of motion in cervical and lumbar was decreased; palpation assessment revealed increased muscle hypertonicity bilaterally in upper paracervical muscles, increased muscle hypertonicity in left trapezius muscle, increased parathoracic musculature on both sides, and decreased muscle tone bilaterally in lumbar paraspinal musculature. R. 390. X-ray of the cervical and lumbar spine revealed straightening of the cervical lordosis with moderate degenerative changes most notable at C5-C7, lumbar degenerative changes from L2-L4 and mild dextroscoliosis in the lumbar spine. R. 390.

The Chiropractor Leanne R. Savion opined that Plaintiff's prognosis was guarded and recommended that she return for treatment weekly. R. 390-91.  Plaintiff followed Chiropractor Savion's recommendation and received weekly manipulation to the cervical, thoracic, and lumbar spine from June 15, 2011, through June 13, 2012; for a total of seventy-seven (77) sessions; she had experienced only minimal, short term improvement of her symptoms, which persist upon returning

to her normal activities. R. 396-397, 462-473, 496-498.  Chiropractor Savion opined that due to the chronic nature of her condition, Plaintiff was unable to perform most activities without pain; therefore, her prognosis was guarded. R. 496.  Plaintiff testified that she stopped treatment with Ms. Savion because she could no longer afford to see her. R. 46.  Plaintiff also testified that she treated at the Osceola Health Department with Dr. Pichardo and she takes Naproxen and Tramadol for the pain, but they are not as effective anymore because her body is immune to them. R. 49, 50.

On August 30, 2012, Chiropractor Savion submitted a form Medical Opinion Re: Ability To Do Work-Related Activities (Physical) in which she opined that Plaintiff had the maximum ability to lift and carry less than ten pounds; sit, stand, or walk less than two hours in an eight-hour workday, alternating and changing positions every five or ten minutes, with other exertional/postural and environmental limitations; and would likely be absent from work more than three times per month due to her impairments and/or treatment. R. 492-98.

At the September 18, 2012 hearing Plaintiff also testified that the pain from her neck to her shoulder is a sharp pain, like a ball sitting on top of her back putting pressure on her; the pain in her lower back is also a sharp pain and she experiences numbness in her buttocks; the pain comes and goes; she can stand in one spot for five to twenty minutes, but that she has to keep moving because her body gets stiff; she does not do much lifting because she has to squat to lift and which results in difficulty standing back up; she could sit for fifteen to twenty minute periods to relieve the pain and pressure, but she has to move around, stretch her legs, and hit and rub her hips; and she takes medication and lies down with a heating pad. R. 43-44.  Consistent with her complaints in the medical records, Plaintiff further testified that she gets headaches 3-4 times a week; to relieve the pain, she places a hot compress over her eyes; she has trouble sleeping and is very irritable due to the pain; and she has difficulty concentrating and remembering things; she has bad days due to pain three times a

week where she stays in the house and does not go to appointments. R. 19, 29-62.  Plaintiff also

testified to certain side effects from the pain medication: they make her drowsy, constipated, and

nauseous. R. 49.

Plaintiff's lengthy treatment history, medical records, and consultative examination support

Plaintiff's allegations of pain and limitations and the ALJ erred in discounting Plaintiff's credibility.

The Regulations establish a "hierarchy" among medical opinions that provides a framework for

determining the weight afforded each medical opinion: "[g]enerally, the opinions of examining

physicians are given more weight than those of nonexamining physicians, treating physicians'

opinions are given more weight than non-treating physicians. *McNamee v. Soc. Sec. Admin.*, 162 F.

App'x 919, 923 (11th Cir. Jan. 31, 2006) (unpublished) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)).

The ALJ found the July 21, 2011 opinion of the non-examining reviewing physician, Dr. Patty

(R. 398-405), was "more consistent with the record as a whole," and did not give Chiropractor Savion[2]

"significant weight" as "not fully supported by the objective medical evidence" and "diagnostic tests"

(R. 22).  However, both Dr. Patty, and the ALJ in relying on his opinion, both failed to recognize that

Savion had obtained x-rays of Plaintiff's cervical and lumbar spine in June 2011 that showed

"straightening of the *cervical* lordosis with *moderate* degenerative changes most notable at C5-C7,

lumbar degenerative changes from L2-L4 and mild dextroscoliosis in the lumbar spine." R. 390.  On

Dr. Patty's RFC opinion, he noted in shorthand: "DJD on LS XR" – translating to degenerative joint

disease on the *lumbar* spine – with no mention of Plaintiff's serious *cervical* spine problems.  X-rays

from Florida Hospital in January 2011 showed C5-6 and C6-7 degenerative disk disease.  R. 489. The

ALJ also erred in describing the findings of Dr. Grant as "benign," when Dr. Grant, who had reviewed

---

[2]Plaintiff concedes that a substantial amount of the most recent medical evidence is from Plaintiff's chiropractor, Leanne Savion, who treated Plaintiff for a year from 2011 to 2012, is not an "acceptable medical source" under the Social Security Regulations.

Plaintiff's x-rays, opined in her examination report Plaintiff's subjective complaints of constant neck pain and back pain (R. 375) were consistent with the objective medical findings, based on x-rays showing "*moderate* degenerative changes noted L2 through S1."  R. 20, 377.

The ALJ also erred in failing to note or clarify that Plaintiff had not obtained "more aggressive" surgery or pain management treatment from a neurologist, pain management doctor, or orthopedic surgeon because she had not been able to afford it.  While a controllable medical condition is generally not disabling, if the claimant cannot afford the treatment and can find no way to obtain it, poverty may excuse the non-compliance.  *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988).  The Commissioner argues that other medical treatment in the record would indicate that Plaintiff still had insurance coverage. The issue is that the ALJ never enquired whether Plaintiff was precluded from obtaining "more aggressive" treatment due to poverty.  The Commissioner also argues that, while conceding that an ALJ *must* consider evidence showing an inability to afford care when denying a claimant's claim due to non-compliance with such care, the ALJ in this case did not err because she primarily based her decision on other factors.  Given the disposition on the ALJ's "other factors" cited by the ALJ, the failure to consider Plaintiff's reason for non-compliance was unquestionably also error.

Plaintiff had undergone pain management in the form of epidural injections for lower back pain from August 2005 through January 2007 (R. 264-91, 317-33); however, as Plaintiff explained to Dr. Grant, she was unable to afford additional pain management treatment after she lost her health insurance coverage in 2007.  R. 375; *see also* R. 358 (could not afford office visit because of high deductible).  Consequently, Plaintiff continued to rely on the Health Department and the Emergency Room for pain medication, and chiropractic treatment for short term relief.  R. 476, 478.

-14-

The Court finds that the ALJ also erred in determining Plaintiff's credibility as to her pain preventing her from performing her past relevant work by failing to consider Plaintiff's long and consistent work history. The Regulations, 20 CFR 404.1529(c)(3) and Social Security Ruling 96-7p[3], advise the ALJ to consider a claimant's prior work record and efforts to work as part of the credibility assessment. 20 CFR 404.1529(c)(3) ("We will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating or non-treating source, and observations by our employees and other persons."); SSR 96–7p, 1996 WL 374186 at * 5 (in assessing the credibility of an individual's statements about pain or other symptoms, the adjudicator should consider statements about the individual's "prior work record and efforts to work").

Although the Eleventh Circuit has not had occasion to rule on the issue, other appellate courts have held that an administrative law judge must consider a long and continuous past work record, with no evidence of malingering, as a factor in determining the credibility of assertions of disabling impairments, reasoning that it is unlikely someone would trade in their productive, and lucrative, work career for the far less lucrative "career" of receiving disability benefits. *See, e.g,. Horan v. Astrue*, 350 Fed. Appx. 483, 484 (2d Cir. 2009) (citing *Rivera vs. Schweiker*, 717 F.2d 719, 725 (2d Cir. 1983)(noting that "[a] claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability")); *Polaski vs. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984); *Podeworney vs. Harris*, 745 F.2d 210 (3d Cir. 1984); *Allen v. Califano*, 613 F.2d 139, 147 (6th Cir. 1980).

---

[3] Although they lack the force of regulation, Social Security Rulings are "binding on all components of the Social Security Administration." 20 C.F.R. § 402.35(b)(1); *see, e.g., McCloud v. Barnhart*, 166 Fed. App'x 410, 419 (11th Cir.2006) (citing SSR 96–6p as authoritative).

In finding Plaintiff only partially credible as to her subjective pain complaints, the ALJ erred in failing to consider Plaintiff's lengthy and consistent work record, where Plaintiff testified that she used to work "a full-time job and two part-time jobs," or 80 to 100 hours/week, to support her family, including a part-time job for 14 years (1987 to 2001) at McDonalds in addition to her full-time job. R. 34.  Plaintiff's earnings record shows significant earnings – especially when indexed[4] – from 1987 to 2006 ($41,240 to $34,423), when they started to falter, but still remained between $23,500 to almost $30,000 until she was laid off in 2010.  R. 146.  The ALJ's failure to consider or discuss Plaintiff's consistent earnings history and her thirty-year consistent work record in assessing her credibility was error, and as such, the ALJ's decision was not based on substantial evidence.  *See, e.g., Stricklin v. Astrue*, 493 F.Supp.2d 1191, 1998 (N.D. Ala. 2007) (holding the ALJ erred in ignoring the plaintiff's work history of "good earnings record" and "very consistent earnings" which supported plaintiff's credibility regarding his inability to work because of physical limitations and pain); *see also Horan*, 350 Fed. Appx. at 484 (holding the ALJ erred in failing to consider the plaintiff's twenty-five year work history); *Ryszetnyk v. Astrue*, 2014 WL 2986700, *12 (E.D.N.Y July 1, 2014) (remanding where ALJ failed to consider the plaintiff's thirty-nine year work history with an attempt to return post injury, which displayed a strong motivation to work and "adds to plaintiff's credibility rather than detracts from it."); *cf. Callahan v. Astrue*, 2008 WL 4999100 (M.D.Ala. Nov. 20, 2008) (utilizing the work history of a claimant with lower-range intellectual functioning to discount credibility)[5].  On

---

[4]Comparing the indexed figures allows a comparison in today's dollars to assess Plaintiff's earnings over her working life.

[5]In *Coleman v. Astrue*, 2012 WL 3231074 (M.D. Fla. Aug. 6, 2012), Judge Wilson rejected plaintiff's contention that the ALJ had erred in failing to consider her work record in assessing her credibility where the ALJ did not explicitly discuss the work history but clearly considered it by eliciting testimony from the vocational expert, the earnings record was part of the administrative record, and plaintiff admitted to being laid off as part of a reduction in force rather than due to her impairment. The *Coleman* case is distinguishable because Judge Wilson did not have occasion to discuss the language of SSR 96–7p, which explicitly requires "in assessing the credibility of an individual's statements about pain or other symptoms, the adjudicator should consider statements about the individual's 'prior work record and efforts to work.'" 1996 WL 374186 at *5.

remand, the ALJ will consider the full objective medical evidence concerning Plaintiff's *cervical* and *lumber* spin in determining her RFC and ability to perform past relevant work, as well as Plaintiff's long and consistent work history consistent with the Social Security Regulations. *See* SSR 96–7p, 1996 WL 374186 at * 5.

**B.** *Activities of Daily Living*

Plaintiff also contends that the ALJ erred in relying on her daily activities to discount her credibility. R. 21.  The ALJ found that Plaintiff was able to "drive, shop, cook, wash dishes, and do laundry" as evidence her "reported daily activities were inconsistent with complaints of disabling pain."  Plaintiff testified that she drives short distances twice per week, washes some dishes, prepares food for herself such as frozen meals or oatmeal, goes to the grocery store, and does her own laundry; however, about three times per week she does not leave the house due to her symptoms. R.45-47, 54. Plaintiff argues such activities are of short duration and not inconsistent with an inability to perform even sedentary work.  *See Lewis v. Callahan*, 125 F.3d 1436, 1444 (11th Cir. 1997) (noting that "participation in everyday activities of short duration, such as housework or fishing" does not disqualify a claimant from disability and does not establish that a claimant can perform sedentary work). The Commissioner argues it was not improper for the ALJ to consider daily activities in the credibility assessment.

The ALJ's description of Plaintiff testimony that she "cooks" is clearly an exaggeration since Plaintiff actually testified that she "cooked" toast for breakfast, frozen meals, or oatmeal; she washes some dishes but her roommate cleans the house; she occasionally visited her boyfriend "every now and then," drove twice a week to her appointments, Publix or Wal-Mart. R. 46-47.  The ALJ failed to properly evaluate Plaintiff's activities of daily living and the decision was not based on substantial

evidence.  On remand, the ALJ will reconsider Plaintiff's testimony, holding a new hearing if warranted.

### C. *Unemployment Compensation*

Lastly, Plaintiff argues that the ALJ erred in discounting her credibility based on her receipt of unemployment compensation benefits from the third quarter of 2010 through the first quarter of 2012.  She contends that, while the regulations provide that the receipt of unemployment compensation benefits is one of many factors the ALJ can consider in evaluating a claimant's credibility, it is not necessarily inconsistent with a claim for disability benefits because, under the applicable Florida Statute, work means full-time, part-time, or temporary work.  Doc. 19 at 19 (citing Fla. Stat. § 443.101 (1)(a)).  If an individual were able to perform part-time or temporary work but not at a "substantial gainful activity" level as defined in the Social Security Regulations, then she could be both disabled under those regulations and able to work for purposes of unemployment compensation benefits under the Florida statute.  Plaintiff cites to Social Security Ruling 00-1c, and a Memorandum by Chief Administrative Law Judge Frank A. Cristaudo, dated August 9, 2010, discussing the Supreme Court case of *Cleveland v. Policy Mgmt. Sys., Corp.*, 526 U.S. 795 (1999), in support[6] of her argument.  Doc. 19 at 20.  She contends that there is no evidence in this case of what types of jobs Plaintiff applied for while receiving unemployment benefits, and without such evidence, it was improper for the ALJ to rely on this factor to discount Plaintiff's credibility.  She additionally argues that  the record shows she stopped receiving unemployment compensation benefits in the first quarter of 2012, which means she was not receiving benefits at the time of the hearing on September

---

[6]Available at http://www.socialsecurity.gov/OP_Home/rulings/di/01/SSR2000-01-di-01.html and http://www.socialsecurityinsider.com/wp-content/uploads/20100809-SSA-memo-unemployment-insurance-ui-soical-security.pdf.

18, 2012 or when the ALJ reached her decision; however, the ALJ found her not disabled for the entire period. R. 167.

The Commissioner argues that the *Cleveland* decision and Social Security Ruling and are not controlling for unemployment compensation benefits as they deal with the interplay between the receipt of DIB benefits and its impact on whether a person can receive relief under the Americans with Disabilities Act (ADA).  Doc. 20 at 9.  The Commissioner also argues that there is no such ruling from the Court as it applies to unemployment compensation benefits and DIB. The Commissioner concedes that Plaintiff cites to a memorandum from the Commissioner's former Chief Administrative Law Judge analogizing similar logic to unemployment compensation benefits and DIB, but argues that even such logic does not foreclose consideration of unemployment benefits, and specifically acknowledges that the ALJ must consider a claimant's application for unemployment benefits along with all of the other evidence in the record and look at the totality of the circumstances.

On remand, the ALJ will address the evidence of whether Plaintiff was disabled (if not before) at the time she stopped receiving unemployment compensation benefits in the first quarter of 2012.

## CONCLUSION

For the foregoing reasons, the decision of the Commissioner is inconsistent with the requirements of law and is not supported by substantial evidence.   Accordingly, the Court **REVERSES** and **REMANDS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g).  The Clerk of the Court is **DIRECTED** to enter judgment consistent with this opinion and thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on July 2, 2015.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

-19-

Copies furnished to:

Counsel of Record